UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| Maria Elena Cantu, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| Michael J. Astrue, Commissioner | § | SA-10-CV-0364 XR (NN) |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** Honorable Xavier Rodriguez
United States District Judge

Plaintiff Maria Elena Cantu this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Cantu is not disabled for the purposes of the Social Security Act (the Act) and denying Cantu's application for Supplemental Security Insurance (SSI). Cantu asked the district court to reverse the Commissioner's decision and to render judgment in her favor.[1] In the alternative, Cantu asked the court to remand the case for further proceedings.

---

[1] Docket entry # 1.

After considering Cantu's brief supporting her complaint,[2] the brief supporting the Commissioner's decision,[3] Cantu's reply brief,[4] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[5]

**Jurisdiction**. The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

**Administrative Proceedings**. Based on the record, Cantu exhausted her administrative remedies prior to filing this action in federal court. Cantu applied for SSI benefits on July 2, 2007, alleging disability beginning on January 1, 2007.[6] At that time, Cantu stated that she was not disabled prior to age 22. The Commissioner denied

---

[2] Docket entry # 8.

[3] Docket entry # 9.

[4] Docket entry # 11.

[5] *See* Local Rules for the Western District of Texas, appx. C, p. 10.

[6] SSA record, p. 80.

2

Cantu's application initially and on reconsideration.[7] Cantu then asked for a hearing before an ALJ. An ALJ held a hearing on October 9, 2008.[8] The ALJ issued a decision on February 4, 2009, concluding that Cantu is not disabled within the meaning of the Act.[9] Cantu asked the Appeals Council to review the decision.[10] On March 13, 2010, the Appeals Council declined to review the decision, determining no reason existed for a review.[11] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Cantu filed this action on June 17, 2010 seeking review of the Commissioner's decision.[12]

**Issue Presented**. Is the ALJ's decision that Cantu is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

**Standard of review**. In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal

---

[7] SSA record, pp. 48-49.

[8] *Id*. at p. 18.

[9] *Id*. at p. 9.

[10] *Id*. at p. 4.

[11] *Id*. at p. 1.

[12] Docket entry # 1.

3

standards in evaluating the evidence.[13] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18] Four elements of proof are weighed by the courts in determining if

---

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[14]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16]*Martinez*, 64 F.3d at 173.

[17]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 ("The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.").

[18]*Martinez*, 64 F.3d at 174.

4

substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

**Entitlement to benefits**. Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the

---

[19]*Id.*

[20]42 U.S.C. § 1382(a)(1) & (2).

[21]42 U.S.C. § 1382c(a)(3)(A).

claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[22]

**Evaluation process and burden of proof**. The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[23] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[25] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[26] The second step involves determining whether the claimant's impairment is severe.[27] If it is not severe, the claimant is deemed not disabled.[28] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[29] If it meets or

---

[22] 42 U.S.C. § 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520 & 416.920.

[24] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[25] 20 C.F.R. §§ 404.1520 & 416.920.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[30] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity (RFC) and the demands of her past work.[31] If the claimant is still able to do her past work, the claimant is not disabled.[32] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[33] If the claimant cannot do other work, she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[34] Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[35] If the Commissioner adequately points to potential alternative employment, the

---

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Leggett*, 67 F.3d at 564.

[35]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

burden shifts back to the claimant to prove that she is unable to perform the alternative work.[36]

**The ALJ's findings and conclusions**. The ALJ reached the "not disabled" decision at step four. At step one, the ALJ found Cantu had not engaged in substantial gainful activity since applying for SSI.[37] At step two, the ALJ found Cantu has the following severe impairments: hypertension and osteoarthritis.[38] At step three, the ALJ found Cantu does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[39] At step four, the ALJ found Cantu has the residual functional capacity to perform medium work and can perform her past work relevant work as a housekeeper/cleaner/janitor.[40] Having determined Cantu can perform her past relevant work, the ALJ determined Cantu is not disabled under the Act.[41]

**Cantu's allegation of error**. Cantu applied for disability benefits based on high cholesterol and arthritis, but in this case Cantu's advocate insists Cantu is disabled

---

[36] *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[37] SSA record, p. 12.

[38] *Id.*, p. 14.

[39] *Id.*

[40] *Id.*, p. 16.

[41] *Id.*

8

because of mental retardation. That position is based on a psychological examination by psychologist Cilla Stultz. Three weeks before her hearing, the advocate referred Cantu to Ms. Stultz for a psychological examination.[42] Up until that time, Cantu had never been examined by a mental health professional. Cantu was 50 years old at that time.

As part of her examination, Ms. Stultz conducted IQ testing. Ms. Stultz opined that Cantu's "academic competencies ranged from the deficient to the low average range of functioning and are consistent with mental retardation."[43] On this basis, the advocate maintains the ALJ should have presumed Cantu meets listing 12.05C[44] and thus determined at step three that Cantu is disabled.

Listing 12.05 applies to mental retardation. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[45] A claimant can meet listing 12.05 under subsection 12.05C if she has "[a] valid verbal, performance, or

---

[42]*Id.*, p. 22.

[43]*Id.*, p. 278.

[44]Docket entry # 8, pp. 7-8.

[45]20 C.F.R. pt. 404, subpt. P., app. 1., § 12.05.

9

full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function…."[46] Even if a claimant has valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function, she must still satisfy her initial burden to demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period before age 22.[47]

Ms. Stultz reported IQ scores consistent with the criteria in listing 12.05C — verbal 63, performance, 67 and full scale 62 — but the record contains no evidence of deficits in adaptive functioning initially manifested during the developmental period before age 22. Cantu's advocate argued that the ALJ should have presumed Cantu was mentally retarded based on the IQ test scores, but the Fifth Circuit has not adopted such a presumption. In a fairly recent opinion, the Fifth Circuit reviewed a claimant's allegation of disability based on mental retardation and declined to address the appropriateness of a presumption based on IQ test scores.[48] Moreover, adopting a

---

[46]*Id.*, § 12.05C.

[47]*See Randall v. Astrue*, 570 F.3d 651, 659 (5th Cir. 2009).

[48]*See Randall*, 570 F.3d at 656 n.8 (recognizing the presumption adopted by some circuits, but declining to address the issue as unnecessary; the court resolved the appeal by evaluating only the present characteristics of the alleged impairment). *See also Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003) ("[I]t is clear that the record should contain some

10

presumption of mental retardation based on IQ test scores would shift the claimant's step-three burden[49] — to demonstrate an impairment meets a listing — to the Commissioner.[50]

Even if the court adopted a presumption, Cantu herself rebutted the presumption. The ALJ found the following testimony persuasive:

---

evidence that supports the finding that onset preceded age 22."); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (finding substantial evidence did not show on-set of deficits in adaptive functioning before age 22, where claimant was first tested when she was 42 years old). *But see Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001) ("[A]bsent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout [claimant's] life."); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 989) ("[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant.").

[49] *See Leggett*, 67 F.3d at 564 ("The burden of proof lies with the claimant to prove disability under the first four parts of the inquiry."); *Medina v. Astrue*, No. SA-08-CV-0644-XR, 2010 WL 2079948, at *5 (W.D. Tex. Mar. 21, 2010) ("The burden of proof for a severe disability and that it meets or medically equals one of the listed impairments of C.F.R. Listing 12.05 rests solely on the Plaintiff.").

[50] *Accord Rhein v. Astrue*, No. 1:09-CV-01754-JLT, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010) ("The intent of the regulations, supported by case law, places the burden at step three of establishing presumptive disability on the claimant. Removing this burden of proof frustrates the social security scheme. Likewise, it would render the language of § 12.05C, requiring proof of the onset of the mental disability by age 22, as mere surplusage.") (citation omitted); *Rogers v. Astrue*, No. 1:07-00626, 2009 WL 750235, at *10 (S.D.W. Va. Mar. 20, 2009) ("To find that low IQ scores create a rebuttable presumption of deficits in adaptive functioning, as did the Court in *Hodges*, shifts the burden to the Commissioner contrary to the language of the Regulations.").

> (1) Cantu testified that she cares for her disabled husband, cooking meals, monitoring his bathing, ensuring her husband has his medications, and driving the husband to his medical appointments;
>
> (2) Cantu takes her husband with her when she shops for groceries in case he has a seizure;
>
> (3) Cantu completes her husband's applications for food stamps;
>
> (4) Cantu is the payee for her husband's disability benefits;
>
> (5) Cantu cashes her husband's disability checks;[51]
>
> (6) Cantu had no doctor relationship with Ms. Stultz;
>
> (7) Cantu co-managed a cleaning business before her husband became disabled; and
>
> (8) Cantu receives no mental health treatment.[52]

This evidence fails to demonstrate deficits in adaptive functioning in activities of daily living.[53]

---

[51] Cantu's advocate asserted in her brief that the husband's disability checks are electronically deposited, but that is not in the record.

[52] SSA record, pp. 14-15.

[53] "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P., app. 1., § 12.00C1. "Social functioning refers to [the clamant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.*, § 12.00C2.

Even if the claimant has test scores consistent with mental retardation, the claimant's IQ scores must be valid to meet the listing.[54] Cantu's advocate faults the ALJ for rejecting Cantu's scores,[55] but the "ALJ may make factual determinations on the validity of I.Q. tests."[56] "In considering the validity of a test result, [the ALJ] should note and resolve any discrepancies between formal test results and the individual's customary behavior and daily activities.[57] The ALJ cited the previously listed discrepancies between the reported IQ scores and Cantu's customary behavior and activities. The ALJ characterized Ms. Stultz's opinion as "very suspect." In light of Cantu's testimony about her work history and activities, the ALJ did not give Ms. Stultz's opinion significant weight and found no convincing evidence of severe mental impairment.[58]

The ALJ's treatment of Ms. Stultz's opinion is supported by substantial evidence. Moreover, Cantu's testimony contradicted Ms. Stultz's report. Cantu testified that she

---

[54]*See Burt v. Barnhart*, No.04-02458-CV-4-IPJ, 2005 WL 2333612, at *2 (11th Cir. Sept. 23, 2005) ("Despite the presumption that attaches based on a valid IQ, even "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.").

[55]Docket entry # 11, pp. 1-2.

[56]*Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

[57]20 C.F.R. pt. 404, subpt. P., app. 1., § 12.05.D1c5c (addressing psychological testing).

[58]SSA record, pp. 14-15.

13

cares for her husband — cleaning, preparing meals, shopping for groceries, making sure her husband takes his medications, taking her husband to doctor's appointments — but Ms. Stultz reported that Cantu's daughter cares for Cantu and her husband, Cantu cannot complete routine household tasks in a reasonable amount of time, and she cannot use the stove to cook simple meals like eggs or canned soup. Ms. Stultz reported that Cantu's listening and expressive skills are deficient — at .5% — but Cantu responded to questions by the ALJ and her advocate and provided detailed explanations about caring for her husband, owing IRS $1,200 in unpaid taxes for prior sub-contracted work, cleaning repossessed manufactured homes, and being unpaid for caring for her husband because she lives with him. Cantu's testimony contradicted Ms. Stultz's opinion.

Cantu's advocate complained that the ALJ rejected the only medical evidence of mental impairment and failed to develop the record further. The ALJ has a duty to develop the facts fully and fairly relating to a claimant's application,[59] but the district judge cannot reverse the ALJ's decision unless the claimant shows that the ALJ failed to fulfill the duty to develop the record and that the claimant was prejudiced by the failure.[60] "An ALJ must order a consultative evaluation when such an evaluation is

---

[59] *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[60] *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

14

necessary to enable the ALJ to make the disability determination. A consultative evaluation becomes "necessary" only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment."[61] Here, Cantu had an opportunity to demonstrate a consultative exam was necessary to enable the ALJ to make a disability determination. Dr. Stultz's report was insufficient to raise a suspicion concerning mental retardation because Cantu's customary behavior and activities contradicted the report.

**Recommendation**. At her hearing, Cantu's advocate argued that Cantu was disabled because of illiteracy,[62] but Cantu testified that she completes her husband's food stamps applications.[63] Her advocate insists Cantu is mentally retarded, but Cantu's testimony demonstrated the ability to perform her past relevant work. To the extent Cantu's mental capacity is diminished, the record contains no evidence of deficits in adaptive functioning. Moreover, Cantu testified that she stopped working because she had to take care of her disabled husband, not for any other reason. I recommend affirming the Commissioner's decision.

---

[61] *Brock*, 84 F.3d at 728.

[62] SSA record, p. 22.

[63] *Id.*, p. 33.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[64] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[65] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of

---

[64] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[65] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[66]

**SIGNED** on July 18, 2011.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[66]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).